**Sleeper Village v. NGM Ins.**               CV-09-44-PB      4/9/10

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>**Sleeper Village, LLC**</u>

    **v.**                                     Case No. 09-cv-44-PB
                                        Opinion No. 2010 DNH 064
<u>**NGM Insurance Co.**</u>


<u>**MEMORANDUM AND ORDER**</u>


Sleeper Village, LLC, the owner of a residential housing development project, has filed a petition for declaratory judgment and damages seeking to recover on a performance bond issued by NGM Insurance Company.  NGM contends that it is entitled to summary judgment for two reasons.  First, it argues that Sleeper Village is not entitled to recover because it failed to comply with Section 3.3 of the bond, which specifies that an owner's declaration of contractor default does not become effective unless the owner agrees to pay the contract's unpaid balance either to the surety or a contractor selected to complete the project.  Next, it argues that Sleeper Village failed to fulfill its obligations under Section 5 of the bond, which in most cases obligates the owner to submit a separate written

notice to the surety stating that the surety is in default and demanding that the default be corrected.  I address each argument in turn.

## I.  Section 3.3

Section 3.3 of the performance bond states that a surety's obligation under the bond does not arise until, among other things, the owner "has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the Contract with the Owner."  (Def.'s Mot. for Summ. J. Ex. 2, Doc. No. 10-3, § 3.3.)  NGM argues that Sleeper Village did not comply with this provision because it never explicitly agreed to pay the balance of the contract price to a new contractor. Alternatively, it argues that Sleeper Village failed to comply with Section 3.3 because it failed to specifically identify the balance of the contract price that was available to fund the completion of the contract.  Neither argument is persuasive.

On April 9, 2007, Sleeper Village wrote to Moulton Construction, Inc., the contractor on whose behalf NGM had issued the performance bond, declaring a contractor default and

-2-

terminating the contractor's right to complete the bonded project.[1]  (See Def.'s Mot. for Summ. J. Ex. 6, Doc. No. 10-7, at 2-3.)  Sleeper Village's attorney forwarded this letter to NGM's attorney with a cover letter that (1) referred to Section 3.3 and included language that, although not in quotation marks, was directly taken from that section; (2) informed NGM that it had identified a contractor that was willing to complete the contract; and (3) stated that Sleeper Village was "prepared to execute a construction contract for the completion of the work at its earliest convenience."  (Def.'s Mot. for Summ. J. Ex. 6, Doc. No. 10-7, at 1.)  Although the cover letter does not precisely track the language of Section 3.3, it is clear that Sleeper Village was agreeing to pay the balance of the contract price to a contractor selected to perform the contract.  There is no doubt that NGM recognized that this was Sleeper Village's intention because an NGM attorney stated, in response to the notice of

---

[1]  Sleeper Village provisionally wrote to NGM on January 30, 2007 to notify it that it was considering declaring a contractor default.  Thereafter, Sleeper Village arranged a conference with NGM and the contractor to discuss methods of performing the contract.  The undisputed facts thus establish that Sleeper Village complied with its obligation under the bond to notify the surety that it was considering declaring a contractor default.

contractor default, "I construe the intent of your letter as a declaration of Contractor Default as well as Sleeper Village pledging contract balances for the completion of the project, but you have not stated so in your letter . . . ." (Def.'s Mot. for Summ. J. Ex. 10, Doc. No. 10-11, at 1.) Under these circumstances, NGM is in no position to fault Sleeper Village for failing to make its intentions clear.

With regard to NGM's second argument, although Sleeper Village did not disclose the balance of the contract price in its notice of default, the performance bond does not obligate it to do so. Thus, Sleeper Village did not violate Section 3.3 by failing to disclose the unpaid balance on the contract.

## II. Section 5

When a contractor default is declared, a surety may: (1) arrange for the contractor to complete the project with the owner's consent; (2) complete the project itself; or (3) obtain bids from other contractors and arrange for the owner to contract with a new contractor to complete the project. (See Def.'s Mot. for Summ. J. Ex. 2, Doc. No. 10-3, § 4.) Alternatively, the surety may waive its right to exercise these options and either pay the balance owed directly to the owner or deny liability and

-4-

provide a statement of reasons.  (See id.)  In the event that the surety fails to act on a notice of contractor default with reasonable promptness, Section 5 provides that "the Surety shall be . . . in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond . . . ." (Id. § 5.)  Section 5 further specifies, however, that the additional written notice requirement does not apply in the event that the surety waives its right to alternative remedies and either denies liability or pays what it owes directly to the owner.

NGM invokes Section 5 in arguing that it is entitled to summary judgment.  Sleeper Village responds by claiming that Section 5 did not obligate it to provide a notice of surety default because NGM waived its right to alternative remedies and agreed to pay the amount owed directly to Sleeper Village.  I agree with NGM.

Although Sleeper Village's attorney's April 9, 2007 cover letter regarding the notice of contractor default suggests that the "most appropriate route" would be for NGM to waive its right to alternative remedies and pay the amount owed on the bond

directly to Sleeper Village, NGM's attorney's response clearly states, "I cannot agree or disagree that [waiver of alternative remedies] is the most appropriate route." (Def.'s Mot. for Summ. J. Ex. 6, Doc. No. 10-7, at 1; Def.'s Mot. for Summ. J. Ex. 10, Doc. No. 10-11, at 2.) The response further states, "So there is no misunderstanding, [NGM] is not waiving any rights it may have . . . under either the construction contract or its bond, or by law, regardless of whether Sleeper Village decides it wishes to terminate [the contractor] and hire a new contractor to complete the project." (Def.'s Mot. for Summ. J. Ex. 10, Doc. No. 10-11, at 3.) Under these circumstances, it is quite clear that NGM did not waive its right to alternative remedies. Thus, Section 5 obligated Sleeper Village to issue a notice of surety default before exercising its rights under the bond.

## CONCLUSION

NGM is entitled to partial summary judgment with respect to its contention that Sleeper Village failed to provide the notice of surety default required by Section 5 of the bond. I cannot say what effect, if any, this failure has on Sleeper Village's

right to relief because this issue has not been properly briefed.[2]

The court will hold a status conference to set up a briefing schedule on May 3, 2010 at 3:00 p.m.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge


April 9, 2010

cc:  Howard Meyers, Esq.
     James Owers, Esq.

---

[2]  NGM contends that a failure to provide a surety default notice when one is required voids the bond.  I decline to address this issue at the present time and instead invite the parties to submit additional briefing on the issue.  Among the authorities that the parties should consider are:  4A Philip L. Bruner & Patrick J. O'Connor, Bruner & O'Connor on Construction Law § 12:74 (West 2010); Paisner v. Renaud, 149 A.2d 869, 871 (N.H. 1959); St. Paul Fire & Marine Ins. Co. v. City of Green River, 93 F. Supp. 2d 1170, 1178-79 (D. Wyo. 2000); Kilpatrick Bros. Paving v. Chippewa Hills Sch. Dist., No. 262396, 2006 WL 664210 (Mich. Ct. App. Mar. 16, 2006).